Sheehan & Associates, P.C.
Spencer Sheehan
505 Northern Blvd Ste 311
Great Neck NY 11021-5101
Telephone: (516) 303-0552
Fax: (516) 234-7800
*spencer@spencersheehan.com*

Reese LLP
Michael R. Reese
100 W 93rd St Fl 16
New York NY 10025-7524
Telephone: (212) 643-0500
Fax: (212) 253-4272
*mreese@reesellp.com*

United States District Court
Southern District of New York                     1:20-cv-01173

| | |
|---|---|
| Francine Civello, individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Conopco, Inc., | |
| Defendant | |

Plaintiff by attorneys alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.     Conopco, Inc. ("defendant") manufactures, distributes, markets, labels and sells vanilla bean ice cream purporting to contain flavor only from their natural characterizing flavor, vanilla under the Breyers Delights brand ("Products").

2.     The Products are available to consumers from retail and online stores of third-parties and are sold in containers of one pint .

3.     The Product's relevant front label representations include "Vanilla Bean," "Made

with Fresh Cream," "Low Fat Ice Cream," and images of vanilla beans and the vanilla flower.



4.      The representations are misleading because though the flavor is represented as being derived from vanilla and vanilla beans, the vanilla taste and flavor is not provided exclusively by vanilla and vanilla beans.

I.      Vanilla is Perennial Favorite Ice Cream Flavor

5.      Ice cream is a year-round treat enjoyed by 96% of Americans.[1]

6.      Its popularity is attributed "to the perfect combination of elements – sugar, fat, frozen water, and air – that make up the mouthwatering concoction."[2]

7.      Ice cream is defined by a minimum of 10 percent milkfat, weighing no less than 4.5

---

[1] Arwa Mahdawi, The big scoop: America's favorite ice-cream flavor, revealed, The Guardian, July 11, 2018
[2] Vox Creative, The Reason You Love Ice Cream So Much Is Simple: Science, Eater.com, October 12, 2017.

pounds to the gallon and containing less than 1.4 % egg yolk solids.[3]

8.      Vanilla is the consistent number one flavor for 28% of Americans, confirmed two groups who would know – the International Dairy Foods Association (IDFA) (ice cream producers) and National Ice Cream Retailers Association (ice cream parlors).

9.      The reasons for vanilla's staying power are "not only because it is creamy and delicious, but also because of its ability to enhance so many other desserts and treats."[4]

10.     By some estimates, approximately two-thirds of "all ice cream eaten is either vanilla or vanilla with something stirred into it, like chocolate chips."[5]

11.     The applications of vanilla ice cream include its centerpiece between chocolate wafers ("sandwich"), enrobed in chocolate on a stick ("bar"), topping a warm slice of fresh-baked pie ("à la Mode"), drizzled with hot fudge, sprinkled with crushed nuts and topped by a maraschino cherry ("sundae") or dunked in a cold frothy glass of root beer ("float").[6]

A.  Philadelphia (American)-style v. French Ice Cream

12.     In the development of ice cream, the two main types were Philadelphia (American)-style and French ice cream, flavored of course, with vanilla.

13.     Like many confections, ice cream was brought here from France, courtesy of two statesmen who served as ambassadors to that nation:  Thomas Jefferson and Ben Franklin.

14.     While these two Founding Fathers could agree on the terms of the Declaration of Independence and Constitution, they could not agree about the superior type of vanilla ice cream.

---

[3] 21 C.F.R. § 135.110(a)(2) ("Ice cream and frozen custard.").
[4] Press Release, IDFA, Vanilla Reigns Supreme; Chocolate Flavors Dominate in Top Five Ice Cream Favorites Among Americans, July 1, 2018
[5] Bill Daley (the other one), Which vanilla ice cream is the cream of the crop? We taste test 12 top brands, Chicago Tribune, July 18, 2018
[6] The True Wonders of Vanilla Ice Cream, FrozenDessertSupplies.com.

15.     President Thomas Jefferson was a partisan of the egg yolk base, describing this treat as "French ice cream."[7]

16.     The French reliance on egg yolks to reduce the amount of butterfat and cream used was not due to taste, but to the limited dairy production and relative abundance of hens.

17.     Dr. C. L. Alsberg, head of the Bureau of Chemistry, U.S. Department of Agriculture, highlighted the differences between these varieties in a 1914 hearing:

> the early French records, the cook books, never made ice cream from cream alone. It was not until ice cream was introduced into England that it was ever made of dairy cream sweetened and flavored and frozen. The French always used cream and eggs or cream and milk and eggs and sugar, with fruits or starches or anything that would make a custard.[8]

18.     Besides the use of eggs, another difference was "that the American ice cream is raw. And the French as a rule is cooked."[9]

19.     The egg yolk solids, when mixed with vanilla, distinguish a "French" vanilla ice cream from its Philadelphia-style counterpart by providing a: [10]

- smoother consistency and silkier mouthfeel;

- caramelized, smoky and custard-like taste; and

- deep-yellow color.[11]

20.     Due possibly to Jefferson's efforts at popularizing this variety, ice cream with 1.4%

---

[7] Thomas Jefferson's Handwritten Vanilla Ice Cream Recipe, Open Culture, July 13, 2014; Thomas Jefferson's Vanilla Ice Cream, Taste of Home, June-July 2012; Thomas Jefferson's Original Vanilla Ice Cream Recipe, Jefferson Papers, Library of Congress; Anna Berkes, "Ice Cream" in Thomas Jefferson Encyclopedia, Thomas Jefferson Foundation, Inc., Monticello.org, June 28, 2013.
[8] Report of Hearing on Ice Cream Before Dr. C. L. Alsberg, Chief of the Bureau of Chemistry, U.S. Department of Agriculture, February 10, 1914 and March 7, 1914, Subject: The Use of Colloids as Stabilizes in Ice Cream, the Butter Fat Standard for Ice Cream and the Bacteriology of Ice Cream, with Special Reference to the Cincinnati Ice Cream Cases. Published by The National Association of Ice Cream Manufacturers, June 1914 at p. 19 ("Alsberg Hearings").
[9] Alsberg Hearings, Testimony of Mr. Lewis, General Manager, J. M. Horton Ice Cream Co. at p.33.
[10] The descriptor "French" or "french" preceding "vanilla" does not modify the word "vanilla."
[11] Sheela Prakash, What's the Difference Between Vanilla and French Vanilla Ice Cream?, The Kitchn, June 7, 2017.

or more egg yolk solids as part of its base is referred to as "french ice cream."[12]

21.     Meanwhile, during the sweltering summer of the Constitutional Convention of 1787, Ben Franklin's "crème froid" or "cold cream" served as a refreshing break for the delegates debating this nation's future.[13]

22.     Ever the tinkerer, Franklin adapted his ice cream to the environment by relying on the abundance of dairy farms in the Philadelphia region, the lack of hens to provide the egg yolk base and foregoing the cooking step, to more quickly produce this refreshing treat for the delegates.[14]

B.  Sources of Vanilla – Vanilla Extract and Vanilla Beans

23.     The form of vanilla used in French and Philadelphia-style ice creams also differs.

---

[12] 21 C.F.R. § 135.110(f)(1) ("The name of the food is 'ice cream'; except that when the egg yolk solids content of the food is in excess of that specified for ice cream by paragraph (a) of this section, the name of the food is 'frozen custard' or 'french ice cream' or 'french custard ice cream'.)

[13] R. Berley, A Treatise on the History of Ice Cream in Philadelphia, The Franklin Fountain; Julia Reed, Ice cream two ways: A tale of two continents, King Arthur Flour, Blog, Aug. 24, 2018; *but see* Jeff Keys, Ice Cream Mix-ins, N.p., Gibbs Smith (2009) at 14.

[14] Vanilla Ice Cream, Philadelphia-Style, The Perfect Scoop, Epicurious.com, Dec. 2011; Dr. Annie Marshall, Vanilla Bean Ice Cream Two Ways, and Ice Cream Basics, July 8, 2011, Everyday Annie Blog ("Varieties of ice cream generally fall into two main categories: Philadelphia-style or French-style.  Philadelphia style ice creams are quicker and simpler, with a heavy cream/milk mixture for the base.  French-style ice creams have a custard base, with cooked egg yolks to help achieve a creamy texture and rich flavor.").

Vanilla Extract                    Vanilla Beans

  

24.     The French variety used vanilla extract, the liquid created when the flavor molecules from the vanilla bean are extracted by alcohol.[15]

25.     The Philadelphia-style relied on the unextracted seed pods contained inside vanilla beans which had not been subject to extraction.

26.     Vanilla beans deliver a more intense and pure flavor with strong visual appeal through the "specks" of the vanilla beans used.[16]

27.     Vanilla extract's advantages are its smoother, more even taste, ease of use, greater portability and lower price.

---

[15] 21 C.F.R. §§ 169.175 (Vanilla extract.) (at least thirty-five (35) percent ethyl alcohol).

[16] Lisa Weiss and Gale Gand, *Chocolate and Vanilla: A Baking Book*, United States: Potter/Ten Speed/Harmony/Rodale (2012) at 113-14; Louisa Clements, Pantry 101: Vanilla extract vs. vanilla beans, Chat Elaine, Nov. 30, 2015; David Lebovitz, The Perfect Scoop: Ice Creams, Sorbets, Granitas, and Sweet Accompaniments. United States: Potter/TenSpeed/Harmony (2011) at 26.

28.     In the best tradition of American compromise, the majority of ice cream today is made in the Philadelphia-style, but flavored with vanilla extract.

## II.     Vanilla is Constantly Subject to Efforts at Imitation Due to High Demand

29.     The tropical orchid of the genus Vanilla (*V. planifolia*) is the source of the prized flavor commonly known as vanilla, defined by law as "the total sapid and odorous principles extractable from one-unit weight of vanilla beans."[17]

30.     Vanilla's "desirable flavor attributes…make it one of the most common ingredients used in the global marketplace, whether as a primary flavor, as a component of another flavor, or for its desirable aroma qualities."[18]

31.     Though the Pure Food and Drugs Act of 1906 ("Pure Food Act") was enacted to "protect consumer health and prevent commercial fraud," this was but one episode in the perpetual struggle against those who have sought profit through sale of imitation and lower quality commodities, dressed up as the genuine articles.[19]

32.     It was evident that protecting consumers from fraudulent vanilla would be challenging, as E. M. Chace, Assistant Chief of the Foods Division of the U.S. Department of Agriculture's Bureau of Chemistry, noted "There is at least three times as much vanilla consumed [in the United States] as all other flavors together."[20]

33.     This demand could not be met by natural sources of vanilla, leading manufacturers to devise clever, deceptive and dangerous methods to imitate vanilla's flavor and appearance.

---

[17] 21 C.F.R. §169.3(c).
[18] Daphna Havkin-Frenkel, F.C. Bellanger, Eds., Handbook of Vanilla Science and Technology, Wiley, 2018.
[19] Berenstein, 412; some of the earliest recorded examples of food fraud include unscrupulous Roman merchants who sweetened wine with lead.
[20] E. M. Chace, "The Manufacture of Flavoring Extracts," Yearbook of the United States Department of Agriculture 1908 (Washington, DC: Government Printing Office, 1909) pp.333–42, 333 quoted in Nadia Berenstein, "Making a global sensation: Vanilla flavor, synthetic chemistry, and the meanings of purity," History of Science 54.4 (2016): 399-424 at 399.

34.     Today, headlines tell a story of a resurgent global threat of "food fraud" – from olive oil made from cottonseeds to the horsemeat scandal in the European Union.[21]

35.     Though "food fraud" has no agreed-upon definition, its typologies encompass an ever-expanding, often overlapping range of techniques with one common goal: giving consumers less than what they bargained for.

A.   Food Fraud as Applied to Vanilla

36.     Vanilla is considered a "high-risk [for food fraud] product because of the multiple market impact factors such as natural disasters in the source regions, unstable production, wide variability of quality and value of vanilla flavorings," second only to saffron in price.[22]

37.     The efforts at imitating vanilla offers a lens to the types of food fraud regularly employed across the spectrum of valuable commodities in today's interconnected world.[23]

| Type of Food Fraud | Application to Vanilla |
| --- | --- |
| ➢ Addition of markers specifically tested for instead of natural component of vanilla beans | • Manipulation of the carbon isotope ratios to produce synthetic vanillin with similar carbon isotope composition to natural vanilla |
| ➢ Appearance of *more* and/or higher quality of the valued ingredient | • Ground vanilla beans and/or seeds to provide visual appeal as "specks" so consumer thinks the product contains real vanilla beans, when the ground beans have been exhausted |

---

[21] Jenny Eagle, 'Today's complex, fragmented, global food supply chains have led to an increase in food fraud', FoodNavigator.com, Feb. 20, 2019; M. Dourado et al., Do we really know what's in our plate?. Annals of Medicine, 51(sup1), 179-179 (May 2019); Aline Wisniewski et al., "How to tackle food fraud in official food control authorities in Germany." Journal of Consumer Protection and Food Safety: 1-10. June 11, 2019.
[22] Société Générale de Surveillance SA, ("SGS "), Authenticity Testing of Vanilla Flavors – Alignment Between Source Material, Claims and Regulation, May 2019.
[23] Kathleen Wybourn, DNV GL, Understanding Food Fraud and Mitigation Strategies, PowerPoint Presentation, Mar. 16, 2016.

|  | of flavor |
|---|---|
|  | • Caramel to darken the color of an imitation vanilla so it more closely resembles the hue of real vanilla[24] |
|  | • Annatto and turmeric extracts in dairy products purporting to be flavored with vanilla, which causes the color to better resemble the hue of rich, yellow butter |
| ➢ Substitution and replacement of a high quality ingredient with alternate ingredient of lower quality | • Tonka beans, though similar in appearance to vanilla beans, are banned from entry to the United States due to fraudulent use |
|  | • Coumarin, a toxic phytochemical found in Tonka beans, added to imitation vanillas to increase vanilla flavor perception |
| ➢ Addition of less expensive substitute ingredient to mimic flavor of more valuable component | • Synthetically produced ethyl vanillin, from recycled paper, tree bark or coal tar, to imitate taste of real vanilla |
| ➢ Compounding, Diluting, Extending | • "to mix flavor materials together at a special ratio in which they [sic] compliment each other to give the desirable aroma and taste"[25] |
|  | • Combination with flavoring substances such as propenyl guaethol ("Vanitrope"), a "flavoring agent [, also] unconnected to vanilla beans or vanillin, but unmistakably producing the sensation of vanilla"[26] |

---

[24] Renée Johnson, "Food fraud and economically motivated adulteration of food and food ingredients." Congressional Research Service R43358, January 10, 2014.
[25] Chee-Teck Tan, "Physical Chemistry in Flavor Products Preparation: An Overview" in Flavor Technology, ACS Symposium Series, Vol. 610 1995. 1-17.
[26] Berenstein, 423.

➢ Addition of fillers to give the impression there is more of the product than there actually is

- "Spiking" or "fortification" of vanilla through addition of natural and artificial flavors including vanillin, which simulates vanilla taste but obtained from tree bark

- Injection of vanilla beans with mercury, a poisonous substance, to raise the weight of vanilla beans, alleged in *International Flavors and Fragrances (IFF), Inc. v. Day Pitney LLP and Robert G. Rose,* 2005, Docket Number L-4486-09, Superior Court of New Jersey, Middlesex County

- Subtle, yet deliberate misidentification and obfuscation of a product's components and qualities as they appear on the ingredient list

   o "ground vanilla beans" gives impression it describes unexhausted vanilla beans when actually it is devoid of flavor and used for aesthetics

   o "natural vanilla flavorings" – "-ing" as suffix referring to something *like* that which is described

➢ Ingredient List Deception[27]

   o "Vanilla With Other Natural Flavors" – implying – wrongly – such a product has a sufficient amount of vanilla to characterize the food

   o "Natural Flavors" – containing "natural vanillin" derived not from vanilla beans but from tree pulp. When paired with real vanilla, vanillin is required to be declared as an artificial flavor

   o "Non-Characterizing" flavors which are not identical to vanilla, but that extend vanilla

38.    The "plasticity of legal reasoning" with respect to food fraud epitomize what H.

---

[27] Recent example of this would be "evaporated cane juice" as a more healthful sounding term to consumers to identify sugar.

Mansfield Robinson and Cecil H. Cribb noted in 1895 in the context of Victorian England:

> the most striking feature of the latter-day sophisticator of foods is his knowledge of the law and his skill in evading it. If a legal limit on strength or quality be fixed for any substance (as in the case of spirits), he carefully brings his goods right down to it, and perhaps just so little below that no magistrate would convict him.

*The law and chemistry of food and drugs*. London: F.J. Rebman at p. 320.[28]

B.    The Use of Vanillin to Simulate Vanilla

39.    The most persistent challenger to the authenticity of real vanilla has been synthetic versions of its main flavor component, vanillin.

40.    First synthesized from non-vanilla sources by German chemists in the mid-1800s, vanillin was the equivalent of steroids for vanilla flavor.

41.    According to Skip Rosskam, a professor of vanilla at Penn State University and former head of the David Michael flavor house in Philadelphia, "one ounce of vanillin is equal to a full gallon of single-fold vanilla extract."[29]

42.    Only 1-2% of vanillin in commercial use is obtained from the vanilla plant, which means almost all vanillin has no connection to the vanilla bean.

43.    Nevertheless, disclosure of this powerful ingredient has always been required where a product purports to be flavored with vanilla. *See* Kansas State Board of Health, Bulletin, Vol. 7, 1911, p. 168 (cautioning consumers that flavor combinations such as "vanilla and vanillin…vanilla flavor compound," etc., are not "vanilla [extract] no matter what claims, explanations or formulas are given on the label.").

44.    Since vanilla is the only flavor with its own standard of identity, its labeling is

---

[28] Cited in Sébastien Rioux, "Capitalist food production and the rise of legal adulteration: Regulating food standards in 19th-century Britain," Journal of Agrarian Change 19.1 (2019) at p. 65 (64-81).
[29] Katy Severson, Imitation vs. Real Vanilla: Scientists Explain How Baking Affects Flavor, Huffington Post, May 21, 2019.

controlled not by the general flavor regulations but by the standards for vanilla ingredients.

45.    This means that if a product is represented as being characterized by vanilla yet contains non-vanilla vanillin, the label and packaging must declare the presence of vanillin and identify it as an artificial flavor. *See* Vanilla-vanillin extract at 21 C.F.R. § 169.180(b) ("The specified name of the food is 'Vanilla-vanillin extract _-fold' or '_-fold vanilla-vanillin extract', followed immediately by the statement 'contains vanillin, an artificial flavor (or flavoring)'."); *see also* 21 C.F.R. § 169.181(b), § 169.182(b) (similar declarations required for Vanilla-vanillin flavoring and Vanilla-vanillin powder).

46.    This prevents consumers from being misled by products which may taste similar to real vanilla and but for consumer protection requirements, would be sold at the price of real vanilla.

C.   Use of "Natural Vanillins" with "Natural Vanilla"

47.    The past ten years have seen many vanillins purporting to be a "natural flavor" – derived from a natural source material which undergoes a natural production process.

48.    However, "natural vanillin" is not a "natural vanilla flavor" because the raw material is ferulic acid or eugenol, from cloves, instead of vanilla beans.

49.    Ferulic acid is converted to vanillin through a natural fermentation process, but this method is cost prohibitive for almost all applications.

50.    Thus, when a product uses "natural vanillin," it is a certainty it is made from eugenol, which was deemed by the FDA to be considered a "natural flavor," due to its manufacturer claiming it is derived by a natural process.

51.    Since this conversion occurs in China with no transparency or verification, regulators and consumers are not told that the production method is a chain of chemical reactions which would more accurately describe an artificial flavor.

12

III.    Flavor Industry's Efforts to Use Less Vanilla, Regardless of any Shortages

52.    The "flavor industry" refers to the largest "flavor houses" such as Symrise AG, Firmenich, Givaudan, International Flavors and Fragrances (including David Michael), Frutarom and Takasago International along with the largest food manufacturing companies such as Unilever.

53.    The recent global shortage of vanilla beans has provided the flavor industry another opportunity to "innovate[ing] natural vanilla solutions…to protect our existing customers."[30]

54.    Their "customers" do not include the impoverished vanilla farmers nor consumers, who are sold products labeled as "vanilla" for the same or higher prices than when those products contained *only* vanilla.

55.    These efforts include (1) market disruption and manipulation and (2) the development of alternatives to vanilla which completely or partially replace vanilla.

A.    Flavor Industry's Attempt to Disrupt Supply of Vanilla to Create a "Permanent Shortage"

56.    The flavor industry has developed schemes such as the "Sustainable Vanilla Initiative" and "Rainforest Alliance Certified," to supposedly assure a significant supply of vanilla at stable, reasonable prices.

57.    Contrary to promoting "sustainability" of vanilla, these programs make vanilla less "sustainable" by paying farmers to destroy their vanilla crops under the pretense of "crop diversification" to the ubiquitous palm oil.

58.    There have also been allegations that Unilever's Rainforest Alliance Certified Program uses child and/or slave labor and is partially responsible for the imprisonment of children.[31]

---

[30] Amanda Del Buono, Ingredient Spotlight, Beverage Industry, Oct. 3, 2016.
[31] Amnesty International, Palm Oil: Global brands profiting from child and forced labour, November 30, 2016.

59.    Other tactics alleged to be utilized by these companies include "phantom bidding," where saboteurs claim they will pay a higher price to small producers, only to leave the farmers in the lurch, forced to sell at bottom dollar to remaining bidders.[32]

60.    The reasons for these counterintuitive actions is because they benefit from high vanilla prices and the use of less real vanilla.

61.    When less vanilla is available, companies must purchase the higher margin, proprietary, "vanilla-like" flavorings made with advanced technology and synthetic biology.

B.    Use of Vanilla WONF Ingredients to Replace and Provide Less Vanilla

62.    The effort to replace vanilla with so-called Vanilla WONF started in the late 1960s, but the last 10 years have seen the proliferation of this ingredient.

63.    The FDA regulations curiously do not contain the term "vanilla with other natural flavors" and use other flavors when explaining the WONF concept, i.e., strawberry flavor and other natural flavors.

64.    One explanation is because the agency knew that if vanilla could be combined and mixed with "other natural flavors," companies would devise methods to reduce the amount of vanilla and "enhance it" with non-vanilla ingredients.

65.    Though flavor companies will not admit their desire to move off real vanilla, this conclusion is consistent with comments of industry executives.

66.    According to Suzanne Johnson, vice president of research at a North Carolina laboratory, "Many companies are trying to switch to natural vanilla with other natural flavors [WONF] in order to keep a high-quality taste at a lower price."

---

[32] Monte Reel, The Volatile Economics of Natural Vanilla in Madagascar, Bloomberg.com, Dec. 16, 2019.

67.     The head of "taste solutions" at Irish conglomerate Kerry urged flavor manufacturers to "[G]et creative" and "build a compounded vanilla flavor with other natural flavors."

68.     This high tech alchemy is believed to cause compounded vanilla flavors (less vanilla) to "match[es] the taste of pure vanilla natural extracts (real vanilla)" with "a smaller quantity of vanilla beans."[33]

69.     These compounded flavors exist in a "black box" with "as many as 100 or more flavor ingredients," including potentiators and enhancers, like maltol, heliotropin and piperonal, blended together allowing the use of less vanilla to achieve the intended taste.[34]

C.   Decline of Industry Self-Governance

70.     That high level executives in the flavor industry are willing to boast of their stratagems to give consumers less vanilla for the same or greater price is not unexpected.

71.     The once powerful and respected trade group, The Flavor and Extract Manufacturers Association ("FEMA"), abandoned its "self-policing" of misleading vanilla labeling claims and disbanded its Vanilla Committee.

72.     FEMA previously opposed industry efforts to deceive consumers, but cast the public to the curb in pursuit of membership dues from its largest members, such as Unilever.

IV.     Ice Cream Flavor Labeling

73.     Daphna Havkin-Frenkel, editor of the *Handbook of Vanilla Science and Technology*, and a leading scholar and researcher on vanilla, summarized the flavoring requirements in the

---

[33] Donna Berry, Understanding the limitations of natural flavors, BakingBusiness.com, Jan. 16, 2018.
[34] Hallagan and Drake, FEMA GRAS and U.S. Regulatory Authority: U.S. Flavor and Food Labeling Implications, Perfumer & Flavorist, Oct. 25, 2018; Charles Zapsalis et al., *Food chemistry and nutritional biochemistry*. Wiley, 1985, p. 611 (describing the flavor industry's goal to develop vanilla compound flavors "That *Seem*[s] to be Authentic or at Least Derived from a Natural Source") (emphasis added).

context of ice cream flavored by vanilla:[35]

> There are three categories of vanilla ice cream, as defined by the FDA Standard of Identity. Vanilla ice cream Category I contains only vanilla extract. Vanilla ice cream Category II contains vanilla made up of 1 oz of synthetic vanillin per 1 gallon of 1-fold vanilla extract. Vanilla ice cream Category III contains synthetic ingredients.

74.   Carol McBride, U.S. vanilla category manager for global flavor giant Symrise, noted these requirements and their effect on consumers: "If the flavor comes partially or fully from another source, the company must stamp 'vanilla flavored' or 'artificial vanilla' on the front of the package, a likely turnoff to consumers."[36]

A.   Early Ice Cream Flavoring Debate is "Stirring"

75.   Before formal regulations were enacted, Congressional Hearings from the 1930s offered the legislature the opportunity to state their position on the non-misleading designation of flavors on ice cream products.

76.   Unsurprisingly, the starting point for the debate was how to label vanilla ice cream flavored with added vanillin from clove oil, a natural source material.

77.   Why, the industry, asked Congress, could they not label their products as "vanilla ice cream" if it contained vanillin from sources other than vanilla beans?

78.   In response, Congressmen E.A. Kenny of New Jersey and Virgil Chapman of Kentucky inquired of ice cream's representative, Mr. Schmidt:

Mr. Kenney:   Do you not think, though, Mr. Schmidt, that if you label it vanilla ice cream, it ought to be vanilla; and if it is made with vanillin extracted from oil of cloves, you ought to label it manufactured with such vanillin?

Mr. Schmidt:   Well, we, of course, do not think so. That is why we are here

---

[35] Daphna Havkin-Frenkel and Faith C. Belanger, eds., *Handbook of Vanilla Science and Technology*, Wiley, 2018 (221).
[36] Melody M. Bomgardner, "The problem with vanilla," Chemical & Engineering News, Sept. 12, 2016.

making our protest. We think, after all, the consuming public is
accustomed to accepting as vanilla artificial vanillas.

Mr. Kenney:    *We agree that Barnum educated us along that line a long time ago.*
(emphasis added)

……………

Mr. Chapman: I do think that if it is chocolate it ought to be labeled "chocolate";
and if it is flavored with vanillin made from oil of cloves, it ought
to be labeled to show that it is flavored with vanillin made from oil
of cloves; and if it is flavored with vanilla, it ought to be labeled
"vanilla"; and if it is " flavored with lemon, it ought to be labeled
"lemon "; and if it is cherry, it ought to be labeled "cherry."

79.    Later in the hearing, Mr. Chapman and another industry representative engaged over

the proper declaration of flavor for ice cream:

Mr. Chapman:    Do you make raspberry?

Mr. Hibben:    Yes.

Mr. Chapman:    And you put that on the label?

Mr. Hibben:    We say "raspberry ice cream."

Mr. Chapman:    And if it is peach, you put that on the label?

Mr. Hibben:    It Is peach ice cream; yes.

Mr. Chapman:    And If you call it vanilla, what do you put on?

Mr. Hibben:    We put "vanilla ice cream" on our labels. That is
what we want to continue to do. We want to put
vanilla on those labels.

Mr. Chapman:    But you say you put in It oil of cloves instead of
vanilla.

Mr. Hibben:    We do not use cloves. We use vanillin derived from
the oil of cloves.

Mr. Chapman:    If you put out strawberry ice-cream, you would not
want to use raspberry to make it, would you?

Mr. Hibben:    No; but we use vanillin, which is an ingredient of the
vanilla bean and, its true to name.

17

| Mr. Chapman: | Is it an extract from the vanilla bean? |
|---|---|
| Mr. Hibben: | It is both. It is taken both from the eugenol and the vanilla bean and is the same product. If you were a chemist you could not tell the difference, and if you were a doctor, you would say that one is just as harmless as the other. |
| Mr. Chapman: | I do not object to buying artificial vanilla ice cream if it is pure, but if it is artificial. I would like to know what I am getting.[37] |

80.   Even before ice cream standards were established, Congress framed the central question for ice cream flavoring as whether the flavor source was entirely derived from the characterizing flavor – i.e., raspberry for raspberry ice cream, vanilla for vanilla ice cream.

B.   Ice Cream Flavoring Regulations

81.   The ice cream standard of identity, 21 C.F.R. § 135.110, established in the early 1960s "provided for a system for designating characterizing flavors in ice cream which has come to be referred to as the '3 category flavor labeling.'"  Exhibit A, Letter from Taylor M. Quinn, Associate Director for Compliance, Bureau of Foods, to Glenn P. Witte, International Association of Ice Cream Manufacturers, May 31, 1979 ("Quinn Letter, May 31, 1979").[38]

82.   The requirements "recognize[s] three distinct types of ice cream, based on the use of natural and various combinations of natural and various combinations of natural and artificial flavors that characterize this food." Exhibit A, Quinn Letter, May 31, 1979; *see* 21 C.F.R. § 135.110(f)(2)(i)-(iii); 21 C.F.R. § 135.110(f)(3)-(5).

---

[37] One of the reasons for the emphasis on flavor derived from the characterizing flavor was ice cream's status as a high value, expensive product, made mainly from milk and cream.  The use of ersatz flavoring lowered the quality of an otherwise valued item.

[38] The attached exhibits have not previously been available to the public.

**Vanilla Ice Cream Labeling Quick Chart**

| Category | Label Diagram | Flavor Source | Authority (21 C.F.R.) |
|---|---|---|---|
| I | ["characterizing flavor"] + ["ice cream"] → "Vanilla Ice Cream" or "Strawberry Ice Cream" | Vanilla Beans | §135.110(f)(2)(i) |
| II | ["characterizing flavor"] + ["flavored"] + ["ice cream"] → "Vanilla Flavored Ice Cream" or "Peach Flavored Ice Cream" | Vanilla Beans; Non-Vanilla Beans | §135.110(f)(2)(ii) |
| III | ["artificial" or "artificially flavored"] + ["characterizing flavor"] + ["ice cream"] → "Artificially Flavored Vanilla Ice Cream" or "Artificially Flavored Strawberry Ice Cream" | Vanilla Beans; Non-Vanilla Beans | §135.110(f)(2)(iii) |

83.    The key distinction between labeling flavors in ice cream compared to other foods is in the meaning of "natural flavor."

84.    In ice cream, "natural flavor" refers to flavor derived only from the characterizing flavor, while "artificial flavor" refers to flavors derived from sources other than the characterizing flavor.

85.    For a category 1 ice cream, which "contains no artificial flavor, the name on the principal display panel or panels of the label shall be accompanied by the common or usual name of the characterizing flavor, e.g., 'vanilla,' in letters not less than one-half the height of the letters used in the words 'ice cream.'" 21 C.F.R. §135.110(f)(2)(i); *see* Quinn Letter, May 31, 1979 ("the designation of a characterizing flavor for category I ice cream is based on the premise that only natural flavor derived from the product whose flavor is simulated may be used.").

86.    Categories 2 and 3 may contain a natural characterizing flavor and artificial flavor simulating it, but differ based on whether the natural characterizing flavor predominates. *See* 21 C.F.R. §135.110(f)(2)(ii) ("Category II") ("If the food contains both a natural characterizing flavor

and an artificial flavor simulating it, and if the natural flavor predominates"); 21 C.F.R. §135.110(f)(2)(iii) ("Category 3") ("If the food contains both a natural characterizing flavor and an artificial flavor simulating it, and if the artificial flavor predominates"); Exhibit A, Quinn Letter, May 31, 1979 ("The flavor designation for category II ice cream is on the basis that the product contains both natural and artificial flavor, but the natural flavor predominates, whereas in category III the artificial flavor predominates.").

87.    The non-vanilla flavor which simulates the natural characterizing vanilla flavor is deemed to predominate when "the amount of vanillin used is greater than 1 ounce per unit of vanilla constituent." *See* 21 C.F.R. §135.110(f)(5)(i); Exhibit B, Letter from R.E. Newberry, Assistant to the Director, Division of Regulatory Guidance, Bureau of Foods, to Daniel P. Thompson, October 30, 1979 ("Newberry Letter, October 30, 1979") (a non-vanilla flavor "is deemed to simulate [resemble or reinforce] vanilla if the addition of the non-vanilla flavor results in a reduction in the amount of vanilla bean derived flavor that would otherwise be used in a vanilla flavored ice cream…such a product would come under category III and have to be labeled as 'artificial vanilla.'").

88.    The requirements – and resulting consumer expectations for almost fifty years – are clear: "the flavor agent for vanilla ice cream (a category I product) is limited to vanilla bean and/or flavor derived from vanilla beans." Exhibit A, Quinn Letter, May 31, 1979.

V.    Front Panel and Ingredient List Nomenclature in Vanilla Ice Cream

A.    Differences Between Ice Cream Flavoring and All Other Foods

89.    The flavor regulations for ice creams are separate from the general flavor regulations for other foods. *Compare* 21 C.F.R. § 135.110(f)(2)-(5) with 21 C.F.R. § 101.22; Exhibit A, Quinn Letter, May 31, 1979 ("The general flavor regulations are not applicable to this standardized

food.").

90.     The ice cream flavor designations were "established long before the development of the general flavor regulations published under 21 CFR 101.22." Exhibit C, Letter from J.L. Summers, Assistant to the Director, Division of Regulatory Guidance, Bureau of Foods to David B. Daugherty, Zink & Triest Company, Inc., April 10, 1979  ("Summers Letter, April 10, 1979") ("Consequently, the labeling requirements for the declaration of flavors in the name of ice cream are specifically provided for by the standard and is separate and apart from the general flavor regulations.").[39]

91.     Under 21 C.F.R. § 101.22(a)(3), "natural flavor" is defined generally as "the essential oil, oleoresin, essence or extractive…which contains the flavoring constituents" from a natural source such as plant material and can refer to combinations of natural flavors.

92.     "Natural Flavor" is used to designate a flavor ingredient because (1) multiple flavors are often combined with enhancers without a standard, concise way to identify it and (2) its use allows protection of trade secrets so each component does not have to be listed.

93.     "Artificial flavor" in contrast is any substance whose function is to impart flavor that is not derived from a natural source.  *See* 21 C.F.R. § 101.22(a)(1).

94.     For the purposes of designating the type of ice cream on the front label, whether a flavor complies with the general definition of natural flavor in other regulations has no relevance. Exhibit C, Summers Letter, April 10, 1979 ("A product identified as 'Vanilla Ice Cream' is subject to the category I ice cream requirements and, therefore, must contain only the characterizing flavor derived from vanilla beans."); Exhibit A, Quinn Letter, May 31, 1979 ("It is our understanding

---

[39] Compare 21 C.F.R. § 135.110(f)(2)-(5) with 21 C.F.R. § 101.22; J.L Summers personally confirmed the contents of his correspondence indicated here to plaintiff's counsel.

that there are available in the market place, natural flavoring compounds that resemble, simulate and/or enhance vanilla flavor but are not derived from vanilla bean.  These flavor compounds would not comply with the intent of the flavor provisions of Category I ice cream").

95.   This is because 21 C.F.R. § 135.110(f) "makes no provision for any natural flavors other than natural characterizing flavors."  Exhibit D, Advisory Opinion to attorneys for FEMA and David Michael & Co., Inc., from Joseph Hile, Associate Commissioner for Regulatory Affairs, February 9, 1983 at 9 ("Advisory Opinion, February 9, 1983") ("FDA must treat all natural flavors that simulate the characterizing flavor as artificial flavors when deciding what name should appear on the principal display panel").[40]

96.   At best, "[N]atural flavors not derived from vanilla beans may be used in combination with the standardized items included under 21 CFR 169 (vanilla-vanillin extract or vanilla-vanillin flavoring) for category II vanilla flavored ice cream provided that the flavoring contributed by or derived from the vanilla beans predominates" and they are fully disclosed as same.  Exhibit E, Letter from Taylor M. Quinn to Kenneth Basa, National Food Ingredient Company, August 22, 1979 ("Quinn Letter, August 22, 1979").

B.   "Natural Flavor" as Declared on Ingredient List in Accordance with 21 C.F.R. § 101.22 ≠ Vanilla Extract or Vanilla Flavoring

97.   Because ice cream is a standardized food and the vanilla ingredients are subject to their own standards of identity, the designation of these vanilla ingredients is controlled by 21 U.S.C. §343(g) – they are required to be specifically declared:[41]

A food shall be deemed to be misbranded –

(g) Representation as to definition and standard of identity

---

[40] 21 C.F.R. § 135.110(f) was previously 21 C.F.R. § 135.110(e).
[41] 21 U.S.C. § 343(g)(2) read with 21 C.F.R. § 135.110(f)(2)(i) and 21 C.F.R. §§ 169.175 – 169.178.

> If it purports to be or is represented as a food for which a definition and standard of identity has been prescribed by regulations as provided by section 341 of this title, unless (1) it conforms to such definition and standard, and (2) its label bears the name of the food specified in the definition and standard, and, insofar as may be required by such regulations, the common names of optional ingredients (other than spices, flavoring, and coloring) present in such food.

98. If an exclusively vanilla ingredient is used, it is designated on the ingredient list by its common or usual name provided by its standard of identity. *See* 21 C.F.R. § 169.175(b)(1) ("The specified name of the food is 'Vanilla extract' or 'Extract of vanilla'."); *see also* 21 C.F.R. § 169.177(b) ("The specified name of the food is 'Vanilla flavoring.'").

99. "Natural Flavor" on the ingredient list of a "vanilla bean ice cream" does not refer to an exclusively vanilla ingredient, because if it did, it would be declared since ingredients are required to be declared by their common or usual name, and the common or usual name for an exclusively vanilla ingredient is not natural flavor. *See* 21 C.F.R. § 101.4(a)(1).

100. Companies know consumers would prefer to see vanilla extract or vanilla flavoring on an ingredient list instead of "natural flavor" for multiple reasons.

101. First, vanilla extract and vanilla flavor(ing) are high value ingredients which appeal to consumers.

102. Second, consumers know what is in vanilla extract as opposed to the intentionally ambiguous "natural flavor," a technical term which allows its components to be kept secret.

103. Third, the ubiquity of "natural flavor" – in almost every food and beverage available – is synonymous with a laboratory-created, mass produced, low value ingredient.

### C. Varieties of "Natural Flavor" Used as Ingredients in Vanilla Ice Cream

104. "Natural flavor" in the context of vanilla products refers to a combination of vanilla with non-vanilla flavors.

105.   Flavor companies sell various vanilla combination flavors or "systems" to ice cream manufacturers.

106.   One of these is called "vanilla with other natural flavors."

107.   The "other natural flavors" generally consist of "natural vanillin" and/or non-vanilla natural flavors such as maltol or piperonal.

108.   Where a vanilla ice cream is flavored with a vanilla WONF containing added "natural vanillin," it no longer qualifies as Category 1 because vanillin has always been "artificial" when compared with real vanilla. *See* Vanilla-vanillin extract at 21 C.F.R. § 169.180(b) ("The specified name of the food is 'Vanilla-vanillin extract _-fold' or '_-fold vanilla-vanillin extract', followed immediately by the statement 'contains vanillin, an artificial flavor (or flavoring)'.").

109.   Where a vanilla ice cream is flavored with a vanilla WONF containing added natural flavors such as maltol or piperonal, it no longer qualifies as Category 1 because "the standard for ice cream does not provide for the label designation of 'With other [natural] flavors' (WONF)."). *see* Exhibit C, Summers Letter, April 10, 1979 ("A product identified as 'Vanilla Ice Cream' is subject to the category 1 ice cream requirements and, therefore, must contain only the characterizing flavor derived from vanilla beans").

D.   <u>"Vanilla Flavor, Natural Flavor" in Vanilla Ice Cream</u>

110.   Other vanilla flavor combinations are sold as flavoring "systems" or "vanilla replacers" because they include multiple ingredients but less real vanilla.

111.   A well-known product was the *Vanguard*, introduced in the late 1970s by the pied piper of deceptive vanilla labeling, David Michael & Co., Inc., part of International Flavors &

Fragrances ("IFF").[42]

112.  Vanguard was self-described as a "flavorless" "natural flavor enhancer" that "contain[ed] no vanilla, vanillin, ethyl vanillin, or any artificial flavor" but reduced the amount of real vanilla by up to half.

113.  This "non-characterizing" natural flavor was a "blend[s] of dozens of plant extractives, roots, and botanicals, all natural ingredients found on the GRAS list."

114.  These non-vanilla GRAS components include additives like piperonal, maltol and heliotropin, which potentiate, enhance and extend vanilla.

115.  David Michael advised customers that (1) the ingredient list of a product made with *Vanguard* would state "vanilla extract [or flavor], natural flavor" and (2) the front label would only state "Vanilla" because the non-vanilla natural flavor was claimed to not "simulate" or taste like vanilla.

116.  The FDA rejected David Michael's attempts at undermining consumer confidence, and promoting deceptive labeling for products flavored with vanilla.

117.  In so doing, it was emphasized that in determining "whether a flavor simulates the characterizing flavor," taste is only one of the factors considered. Exhibit D, Advisory Opinion, February 9, 1983 at p. 10.

118.  Other factors included "whether the flavor extends the characterizing natural flavor." Exhibit D, Advisory Opinion, February 9, 1983 at 9 ("a flavor that permits less of the characterizing flavor to be used than would otherwise be the case simulates that flavor") and 10-11 ("if an ice cream manufacturer added a small amount of a natural flavor not derived from the

---

[42] While it is uncertain whether David Michael has involvement in the Products of defendant, it is the most outspoken of flavor companies on vanilla labeling and its interpretations are adopted by companies seeking a legal justification to bend and break the rules.

vanilla bean to his mix to permit the use of a smaller amount of vanilla-vanillin flavor, the natural flavor would simulate the characterizing flavor.").

119.   During the decades following the FDA's clear interpretation, most companies played by the rules.

120.   During the last ten years, the scarcity of vanilla and declining industry profits offered a renewed opportunity for David Michael to sell its products to manufacturers in a way which (1) deceived them through their description of their flavors and a knowingly false interpretation of the regulations and (2) by extension, deceived consumers who had no choice but to rely on the labeling applied by the manufacturer.

121.   David Michael, continues to deceive consumers by promoting Vanguard as "a natural, non-characterizing flavor that functions as a base smoother while allowing for displacement in the amount of vanilla used without any reduced flavor impact."[43]

Vanguard® is a natural, non-characterizing flavor that functions as a base smoother while allowing for displacement in the amount of vanilla used without any reduced flavor impact.

122.   It is just as implausible today as it was when the FDA rejected it in 1983 that a "non-characterizing" "natural flavor" can provide the same vanilla taste ("without any reduced flavor impact") through use of less real vanilla ("allowing for displacement in the amount of vanilla"), yet have no relationship with vanilla.

123.   To accept that a product labeled as "vanilla" can have non-characterizing, non-vanilla flavors which are not required to be disclosed on a front label makes little sense because it is illogical to add completely different flavors, i.e., strawberry, to a vanilla product.

124.   In other words, there must be some relation of the "non-characterizing" non-vanilla

---

[43] IFF, "Taste Creations – Vanilla."

flavor to the vanilla flavor, *viz*, extending it through making less vanilla provide a larger sensory effect.

E.   Non-Vanilla Flavor Components are Not "Masking Flavors"

125.   A non-vanilla natural flavor in a vanilla ice cream product labeled only as vanilla may be deceptively described (1) as a "masking flavor" which blocks or limits a negative taste sensation caused by other ingredients or (2) as "rounding out" harsher notes and ancillary flavors.

126.   Masking flavors are claimed to work "in the background with the characterizing notes, elevating them to their true potential" and "subdu[ing] off flavors from other ingredients…allowing the characterizing flavor to shine."[44]

127.   In a standard "vanilla ice cream" product, a non-vanilla "masking" flavor would not perform any necessary function other than creating the impression the food contains more vanilla, requiring disclosure on the front label.

VI. The Products are Misleading Because they Contain Non-Vanilla Flavor and/or Components

128.   The front label statements of "Vanilla Bean Ice Cream" and "Vanilla Bean" are understood by consumers to identify a product where (1) vanilla is the characterizing flavor, (2) vanilla is contained in a sufficient amount to flavor the product, (3) the flavor is derived from vanilla extract or vanilla flavoring and unexhausted vanilla beans, (4) no other flavors simulate, resemble, reinforce, or enhance flavoring from vanilla or permit less real vanilla to be used and (5) vanilla is the exclusive source of flavor.

A.   Ingredient List Declaration of "Natural Flavor" Reveals Flavor is Not Exclusively Vanilla

---

[44] Donna Berry, Modifying Flavor in Dairy Foods, April 11, 2018, Food Business News.

129.   The ingredient list reveals the Product's flavoring ingredient is "Natural Flavor."

Ingredient List

**INGREDIENTS:** SKIM MILK, SOLUBLE CORN FIBER, CREAM, ERYTHRITOL, MILK PROTEIN CONCENTRATE, **LESS THAN 2% OF:** SUGAR, GLYCERIN, VEGETABLE GUM (GUAR, CAROB BEAN), MONOGLYCERIDES, NATURAL FLAVOR, REB A (STEVIA EXTRACT), VITAMIN A PALMITATE.

**INGREDIENTS:** SKIM MILK, SOLUBLE CORN FIBER, CREAM, ERYTHRITOL, MILK PROTEIN CONCENTRATE, **LESS THAN 2% OF:** SUGAR, GLYCERIN, VEGETABLE GUM (GUAR, CAROB BEAN), MONOGLYCERIDES, ==NATURAL FLAVOR==, REB A (STEVIA EXTRACT), VITAMIN A PALMITATE.

130.   For the above-described reasons, the Product's "Natural Flavor" is not exclusively vanilla and contains non-vanilla flavors which extend, simulate, enhance and resemble vanilla.

131.   The Product's front label is misleading because it fails to identify these non-vanilla flavors, which are not permitted in Category 1 ice cream.

132.   Where the front label of an ice cream product represents it is flavored only from the characterizing vanilla flavor, it is deceptive and unlawful to include flavor not derived from vanilla beans.[45]

VII.    Product Does Not Contain Unexhausted Ground Vanilla Beans

133.   Vanilla beans are the source of vanilla flavor, which is obtained through extraction with ethyl alcohol.

134.   After all flavor has been extracted from vanilla beans, the exhausted or spent beans

---

[45] 21 C.F.R. § 135.110(f)(2)(i).

are typically discarded as a waste product, as they contain no nutritive or flavoring value.

135.   However, manufacturers and suppliers have devised multiple methods to re-use the spent beans.

136.   The first method involves a drying, chopping and sining process before being added to a product "strictly in a cosmetic manner, as they are flavorless."[46]

137.   The second method involves infusing the exhausted beans with synthetic vanillin and other flavoring substances prior to being incorporated into food.

138.   This tactic gives non-vanilla flavor to the spent beans, but unbeknownst to consumers, it is not "real vanilla" flavor, as that had already been extracted.

139.   Several reasons support the conclusion that where a product name includes "vanilla bean" and the ingredient list contains "natural flavor," the flavoring component will contain microscopic fragments of exhausted or spent vanilla beans.

140.   First, in mass produced products, the inclusion of ground vanilla beans would result in inconsistent flavoring from batch to batch.

141.   Second, the use of ground vanilla beans not devoid of flavor requires unique equipment and processes.

142.   Only a handful of specialty companies, such as Graeters of Ohio, possess such capabilities.

143.   Third, the global scarcity of vanilla beans means that almost all beans are used for vanilla extract, which has significantly more uses and is easier to sell.

144.   Fourth, the imbalance in use of real vanilla compared to demand for exhausted seeds support the conclusion that spent seeds are being used to give the appearance of *more* vanilla when

---

[46] Chat Nielsen, Jr., The Story of Vanilla, p. 15.

the products are providing *less* vanilla.

145. Established supplier Cook's Vanilla noted the "inordinate increase in demand for seeds, even while demand for pure vanilla extract has dropped," reporting that over the last two years, companies have requested:

> thousands of pounds of vanilla bean seeds accompanying much smaller orders for blended (Category II) vanillas made from both artificial and pure extract.
>
> The mismatch between demand for vanilla seeds and vanilla extract makes it impossible to supply enough seeds. Since the seeds are a small by-product of vanilla extract, and we cannot obtain them unless we buy (extremely expensive) whole vanilla bean pods and make (extremely expensive) pure vanilla extract from them.
>
> Even the cheapest, lowest-grade vanilla bean pods cost more that $100 per pound. So it unequivocally makes no sense to purchase vanilla bean pods for the sole purpose of getting their seeds.
>
> Which means that some of the seeds you see are not vanilla bean seeds at all. Just as with pure vanilla extract, we suspect significant adulteration of exhausted vanilla bean seeds in the industry.[47]

146. Aust & Hachman, a vanilla importer in Montreal also observed that "demand for exhausted or spent vanilla, (vanilla waste after extraction), and vanilla seeds sifted from this material has exploded over the last 12 months" because the amount of actual vanilla has been at low levels, in part due to climactic conditions.[48]

147. As defendant is not willing to give consumers real vanilla extract or vanilla flavoring without added enhancers and non-vanilla flavors, it is implausible they will include the higher priced unexhausted vanilla beans.

148. To the extent the Products contain even exhausted vanilla beans, they are a part of the "Natural Flavor."

---

[47] Cook's Blog, Vanilla Bean Seeds: A Troubling New Trend, June 13, 2019.
[48] Aust & Hachman Canada, May 2019 Update.

149.  However, it would be unlawful to include exhausted vanilla bean pieces in the "Natural Flavor" since this component is not generally recognized as safe ("GRAS"), which is a requirement for flavoring materials.

VIII.    Products are Misleading Because They are Labeled and Named Similar to Other Products

150.  Competitor ice cream products are labeled as, and containing vanilla beans, and are not misleading because they contain non-exhausted vanilla beans.

A.  Vanilla Bean Ice Cream Product of Competitor and Defendant

151.  The following are Vanilla Bean Ice Cream products of a competitor and defendant.

Madagascar Vanilla Bean           Vanilla Bean (Defendant)

 

INGREDIENTS: CREAM, MILK, CANE SUGAR, SKIM MILK, EGGS, VANILLA BEAN, VANILLA EXTRACT, CAROB BEAN GUM, GUAR GUM.

**INGREDIENTS:** CREAM, MILK, CANE SUGAR, SKIM MILK, EGGS, VANILLA BEAN, VANILLA EXTRACT, CAROB

**INGREDIENTS:** SKIM MILK, SOLUBLE CORN FIBER, CREAM, ERYTHRITOL, MILK PROTEIN CONCENTRATE, **LESS THAN 2% OF:** SUGAR, GLYCERIN, VEGETABLE GUM (GUAR, CAROB BEAN), MONOGLYCERIDES, NATURAL FLAVOR, REB A (STEVIA EXTRACT), VITAMIN A PALMITATE.

**INGREDIENTS:** SKIM MILK, SOLUBLE CORN FIBER, CREAM, ERYTHRITOL, MILK PROTEIN CONCENTRATE, **LESS**

BEAN GUM, GUAR GUM.

**THAN 2% OF:** SUGAR, GLYCERIN, VEGETABLE GUM (GUAR, CAROB BEAN), MONOGLYCERIDES, NATURAL FLAVOR, REB A (STEVIA EXTRACT), VITAMIN A PALMITATE.

152.  The competitor product identifies "Vanilla Bean" and "Vanilla Extract," and the listing of vanilla bean is truthful and non-misleading because the manufacturer has disclosed its unique specialized methods for including non-exhausted vanilla beans and its vanilla extract does not contain non-vanilla flavor.

153.  Defendant's Product lists "Natural Flavor" which refers to an ingredient containing non-vanilla flavoring.

B.  <u>Misleading to Have Identical or Similar Product Names Where Significant Differences in Product Quality or Composition</u>

154.  Products are required to be identified and labeled in a way consistent with other products of similar composition.

155.  This framework assures consumers will not be misled by the quality and components of similarly labeled products where one product contains a greater amount, type and/or proportion of a characterizing and valuable ingredient than defendant's Product.[49]

156.  Where two products are identified as "Vanilla Bean Ice Cream," consumers will be deceived into purchasing the product which contains less of the valuable ingredients under the false impression that it contains the equivalent amount of said ingredients or components.

IX.    Conclusion

---

[49] *See* 21 C.F.R. § 135.110(f) and 21 C.F.R. § 102.5(a) ("General principles.") ("General principles.") ("The name shall be uniform among all identical or similar products and may not be confusingly similar to the name of any other food that is not reasonably encompassed within the same name. Each class or subclass of food shall be given its own common or usual name that states, in clear terms, what it is in a way that distinguishes it from different foods.").

157.  Defendant's branding and packaging of the Products are designed to – and does – deceive, mislead, and defraud consumers.

158.  Defendant has sold more of the Products and at higher prices per unit than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

159.  The amount and proportion of the characterizing component, vanilla, has a material bearing on price or consumer acceptance of the Products because consumers are willing to pay more for such Products.

160.  The value of the Product that plaintiff purchased and consumed was materially less than its value as represented by defendant.

161.  Had plaintiffs and class members known the truth, they would not have bought the Products or would have paid less for it.

162.  The Product contains other representations which are misleading and deceptive.

163.  As a result of the false and misleading labeling, the Product is sold at a premium price, approximately no less than $2.49 per unit, excluding tax, compared to other similar products represented in a non-misleading way.

<u>Jurisdiction and Venue</u>

164.  Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2) (Class Action Fairness Act of 2005 or "CAFA").

165.  Under CAFA, district courts have "original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity[.]"  *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013).

166.  Upon information and belief, the aggregate amount in controversy is more than $5,000,000.00, exclusive of interests and costs.

167.  Plaintiff is a citizen of New York.

168.  Defendant is a New York corporation with a principal place of business in Englewood Cliffs, Bergen County, New Jersey and is a citizen of New Jersey and New York.

169.

170.

171.  Defendant is a citizen of New York and New Jersey because it is incorporated in New York and has its principal place of business in New Jersey. *Andrews v. CitiMortgage, Inc.*, No. 14-cv-1534 (JS)(AKT) (E.D.N.Y. Mar. 31, 2015) ("[a] corporation has dual citizenship for purposes of a federal court's diversity jurisdiction under 28 U.S.C. § 1332; namely, it is a citizen of the state of its incorporation and of the state where it has its principal place of business.").

172.  "Minimal diversity" exists because even though the parties are citizens of New York, plaintiff seeks to represent persons in all states who purchased the Products. *Gonzales v. Agway Energy Services, LLC*, No. 18-cv-235 (N.D.N.Y. Oct. 22, 2018) ("At this time, the allegation that some class member maintains diversity with Defendant is sufficient to establish minimal diversity under CAFA" and citing 28 U.S.C. § 1332(d)(1)(D) "'the term 'class members' means the persons (named or unnamed) who fall within the definition of the proposed or certified class in a class action.").

173.

174.  Certain exceptions preclude diversity jurisdiction. 28 U.S.C. § 1332(d)(4).

175.  The "local controversy" exception does not apply because less than two-thirds of the putative class members are citizens of New York.

176.  Under the "local controversy" exception, a district court must decline jurisdiction if "more than two-thirds of the putative class members are citizens of the state in which the action

was originally filed. *See Green v. Sweetworks Confections, LLC*, No. 18-cv-902 S.D.N.Y. Aug. 21, 2019) quoting 28 U.S.C. § 1332(d)(4)(A).

177.   At bar, the "local controversy" exception is not satisfied because less than two-thirds of proposed class members are citizens of New York.

178.   For more than two-thirds of class members to be citizens of New York, defendant would need two-thirds of its customers to be from New York, even though New York does not contain this percentage of the nation's population.

179.   Under the "home state controversy" exception to CAFA, a district court "shall decline to exercise jurisdiction" if "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B).

180.   For the same reasons that the local controversy exception does not apply, the home state controversy does not apply.

181.   This court has personal jurisdiction over defendant because it conducts and transacts business, contracts to provide and/or supply and provides and/or supplies services and/or goods within New York.

182.   Venue is proper because plaintiff and many class members reside in this District and defendant does business in this District and State.

183.   A substantial part of events and omissions giving rise to the claims occurred in this District.

<u>Parties</u>

184.   Plaintiff is a citizen of New York, New York County, New York.

185.   Defendant Conopco, Inc. is a New York corporation with a principal place of

business in Englewood Cliffs, New Jersey, Bergen County.

186.   During the relevant statutes of limitations, plaintiff purchased the Product within this district and/or State for personal consumption in reliance on the representations.

<u>Class Allegations</u>

187.   The classes will consist of all purchasers of the Products in New York, the other 49 states and a nationwide class, during the applicable statutes of limitations.

188.   Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

189.   Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

190.   Plaintiff is an adequate representative because her interests do not conflict with other members.

191.   No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

192.   Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

193.   Plaintiff's counsel is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

194.   Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>New York GBL §§ 349 & 350</u>
<u>(Consumer Protection from Deceptive Acts)</u>

195.   Plaintiff incorporates by reference all preceding paragraphs.

196.   Plaintiff and class members desired to purchase, consume and use products or

services which were as described and marketed by defendant and expected by reasonable consumers, given the product or service type.

197.  Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

198.  Defendant's conduct was misleading, deceptive, unlawful, fraudulent, and unfair because it gives the impression to consumers the Products contain sufficient amounts of the highlighted ingredients, vanilla and vanilla beans, to characterize the taste or flavor of the Products, only contain flavor from their characterizing ingredients and contain non-exhausted vanilla beans.

199.  Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

<u>Negligent Misrepresentation</u>

200.  Plaintiff incorporates by reference all preceding paragraphs.

201.  Defendant misrepresented the substantive, quality, compositional, organoleptic and/or nutritional attributes of the Products through representing they contain sufficient amounts of the highlighted ingredients, vanilla and vanilla beans, to characterize the taste or flavor of the Products, only contain flavor from their characterizing ingredients and contain non-exhausted vanilla beans.

202.  Defendant had a duty to disclose and/or provide non-deceptive marketing of the Products and knew or should have known same were false or misleading.

203.  This duty is based on defendant's position as an entity which has held itself out as having special knowledge and experience in the production, service and/or sale of the product or service type.

204.  The representations took advantage of consumers' (1) cognitive shortcuts made at

the point-of-sale and (2) trust placed in defendant, a well-known and respected brand in this sector.

205.   Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Products.

206.   Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Breaches of Express Warranty, Implied Warranty of Merchantability and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, <em>et seq.</em>

207.   Plaintiff incorporates by reference all preceding paragraphs.

208.   Defendant manufactures and sells Products that give the impression they contain sufficient amounts of the highlighted ingredients, vanilla and vanilla beans, to characterize the taste or flavor of the Products, only contain flavor from their characterizing ingredients and contain non-exhausted vanilla beans.

209.   The Products warranted to plaintiff and class members that they possessed substantive, functional, nutritional, qualitative, compositional, organoleptic, sensory, physical and other attributes which they did not.

210.   Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Products.

211.   This duty is based, in part, on defendant's position as one of the most recognized companies in the nation in this sector.

212.   Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

213.   Defendant received notice and should have been aware of these misrepresentations due to numerous complaints by consumers to its main office over the past several years.

214.   The Products did not conform to their affirmations of fact and promises due to defendant's actions and were not merchantable.

215.   Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

<u>Fraud</u>

216.   Plaintiff incorporates by references all preceding paragraphs.

217.   Defendant represented the Products contain sufficient amounts of the highlighted ingredients, vanilla and vanilla beans, to characterize the taste or flavor of the Products, only contain flavor from their characterizing ingredients and contain non-exhausted vanilla beans.

218.   Defendant's fraudulent intent is evinced by its failure to accurately identify the Products on the front label.

219.   Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

<u>Unjust Enrichment</u>

220.   Plaintiff incorporates by reference all preceding paragraphs.

221.   Defendant obtained benefits and monies because the Products were not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

  **WHEREFORE**, Plaintiff prays for judgment:

1.  Declaring this a proper class action, certifying Plaintiff as representative and undersigned as counsel for the class;

2.  Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3.  Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, restitution and disgorgement for members of the State Subclasses pursuant to the applicable laws of their States;

4.  Awarding monetary damages and interest, including treble and punitive damages, pursuant to the common law and other statutory claims;

5.  Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6.  Other and further relief as the Court deems just and proper.

Dated:   February 11, 2020

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan
505 Northern Blvd Ste 311
Great Neck NY 11021-5101
Telephone: (516) 303-0552
Fax: (516) 234-7800
*spencer@spencersheehan.com*
E.D.N.Y. # SS-8533
S.D.N.Y. # SS-2056

Reese LLP
Michael R. Reese
100 W 93rd St Fl 16
New York NY 10025-7524
Telephone: (212) 643-0500
Fax: (212) 253-4272
*mreese@reesellp.com*

1:20-cv-01173
United States District Court
Southern District of New York

Francine Civello, individually and on behalf of all others similarly situated,

Plaintiff,

- against -

Conopco, Inc.,

Defendant

## Class Action Complaint

```
Sheehan & Associates, P.C.
  505 Northern Blvd Ste 311
  Great Neck NY 11021-5101
      Tel: (516) 303-0552
      Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated: February 11, 2020

/s/ Spencer Sheehan
Spencer Sheehan